UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| RICKY L. GRICE | CIVIL ACTION NO. 07-0617 |
| VS. | SECTION P |
| KATHLEEN BLANCO, ET AL. | JUDGE DOHERTY |
| | MAGISTRATE JUDGE METHVIN |

REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* by *pro se* plaintiff Ricky L. Grice on March 20, 2007.  Plaintiff is an inmate in the custody of the Alabama Department of Corrections (ADOC); however, he is incarcerated at the South Louisiana Corrections Center (SLCC) in Basile, Louisiana. Plaintiff complains of conditions of confinement at SLCC.

Grice names as defendants Louisiana Governor Kathleen Blanco, SLCC's owner, Pat LeBlanc, and SLCC employees Nurse Boone, Steven Bullard, Gary Copes, Michelle DuGos, Diane Lott, and Michael Striedel.  He prays for compensatory, punitive, and nominal damages and injunctive relief.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief might be granted.

2

It is further recommended that plaintiff's "Motion for Injunction" [doc. 26] be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief might be granted.

### Background

Plaintiff is an inmate in the custody of the ADOC.  In February and March 2006, plaintiff and a number of other ADOC inmates were transferred from penitentiaries in Alabama to SLCC. On March 2, 2007, plaintiff and three other ADOC inmates (Timothy Watters, Torey Beasley, and Centorian Nance) filed a civil rights complaint in the United States District Court for the Middle District of Alabama. [*Ricky Grice, et al. v. Kathleen Blanco, et al.,* No. 2:07-cv-0189]  In that suit, plaintiffs contested their transfer from Alabama to Louisiana and also complained about conditions of confinement at SLCC. The Alabama inmate-plaintiffs named as defendants Alabama Governor Bob Riley and ADOC Commissioner Richard Allen along with the Louisiana defendants named above.  Plaintiff requested appointment of counsel and asked the court to certify the complaint as a class action.

On March 6, 2007, Magistrate Judge Charles S. Coody directed the Clerk of Court to open four separate civil actions, one for each inmate. [doc. 5]  On March 7, 2007, Judge Coody denied plaintiff's Motion to Appoint Counsel [doc. 7] and issued a report recommending denial of plaintiff's Motion for Class Action Certification. [doc. 8]  Thereafter, Judge Coody issued a second report recommending dismissal of plaintiff's claims against Governor Riley and Commissioner Allen; dismissal of plaintiff's state law claims; and transfer of plaintiff's conditions of confinement claims to this court. [doc. 9]  Plaintiff timely objected to the Report and Recommendation [doc. 12].  On March 30, 2007, United States District Judge Myron H.

3

Thompson adopted the Report and Recommendation, dismissing the claims against Governor Riley and Commissioner Allen, dismissing all claims concerning the legality and constitutionality of his transfer to Louisiana, and transferring to this court plaintiff's conditions of confinement claims. [docs. 13-14][1]

### Statement of Plaintiff's Claims

### 1. The Original Complaint [doc. 1-1]

Plaintiff's original complaint set forth nine numbered "counts." Counts I-V were dismissed by the United States District Court for the Middle District of Alabama.

In the claims related to conditions of confinement in Louisiana, plaintiff alleged:

**Count VI** – The defendants are in violation of La. R.S.15:709(C) which prohibits housing out-of-state inmates in a private facility with Louisiana inmates if the out-of-state inmates would be classified as "maximum custody" under Louisiana Guidelines.

**Count VII** – The actions of the defendants have exceeded the legislative authority delegated to the defendants by state law subjecting the plaintiff to the deprivation of adequate access to legal material as well as inadequate time in the law library (7 hours a week in a space that has only two chairs). Plaintiff also has been denied adequate opportunity for exercise and "fresh air." Plaintiff has been deprived of rights, benefits, privileges, and programs that are available to ADOC inmates housed in Alabama prisons. Plaintiff has been subjected to a "hostile" environment by a private organization that has an established record of negligence,

---

[1] The Louisiana related complaints of the co-plaintiffs were also transferred to this court. On June 21, 2007, those complaints were ordered stricken because the individual plaintiffs failed to submit *in forma pauperis* applications or pay the full amount of the filing fees assessed in each case. See *Timothy Watters v. Kathleen Blanco, et al.*, No. 6:07-cv-0634; *Torey Beasley v. Kathleen Blanco, et al.*, No. 6:07-cv-0674; and *Centorian Nance v. Kathleen Blanco, et al.*, No. 6:07-cv-0675.

4

abuse and mistreatment of prisoners; improperly trained staff; and,  improperly supervised

dorms. Plaintiff is forced to pay high prices for canteen items. There are no windows to allow

fresh air into the dorms. Plaintiff is forced to spend 23 hours a day in the dorms. The dorms are

in need of repair and do not meet "A.D.A. Standards." Thus plaintiff is being subjected to cruel

and unusual punishment in violation of the First, Eighth, and Fourteenth Amendments of the

United States Constitution.

**Count VIII** – The defendants open "legal mail" outside the presence of the inmates and

return mail to sender without informing the inmate the reason for such action. Legal mail is held

more than 24 hours for no legitimate reason.  Legal Mail is distributed every other Monday and

every other Friday. "Incentive packages" are not distributed.  Notary services are provided only

one day per week; certified mail charges must be paid by the prisoner with no provision made for

indigent prisoners. The defendants censor out-going mail. One inmate was placed in lock-down

for writing a letter to the media concerning the illegality of his transfer and the letter was

confiscated and not mailed.

**Count IX** – The defendants have violated the Eighth Amendment by (1) housing

Alabama inmates with Louisiana inmates; (2) allowing Alabama and Louisiana inmates to

exercise together; (3) housing Alabama inmates with Louisiana inmates who are infected with

tuberculosis, herpes, and HIV/AIDS; and,  (4) allowing infected Louisiana inmates to prepare

food and work in the kitchen without testing.

Plaintiff prayed for compensatory, punitive and nominal damages, and, with regard to the

Louisiana defendants, an injunction prohibiting the defendants from denying adequate health

care, access to legal resources, and enjoining the housing of Alabama inmates with Louisiana inmates.

### 2. The First Amended Complaint [doc. 20]

On May 20, 2007, plaintiff filed an Amended Complaint adding two additional counts as follows:

**Count X** – Defendants Diane Lott, Michelle Dugos, and Nurse Boone are responsible for the health care of all SLCC inmates. Defendants are subjecting plaintiff to the "indiscriminate threat to the well being of all inmates at this facility by the defendants' failure to screen newly arriving inmates for communicable diseases, and this due process violation of the Eighth Amendment would be sufficiently harmful to all inmates housed at this facility to create sufficient evidence of the defendants' deliberate indifference to serious medical needs." Plaintiff further claims that at least one inmate was being medicated because of his exposure to T.B. at SLCC, and that "many nights there are no medical staff at the institution." Finally, he complains that he has "... been suffering with dental pain for over three months after notifying the medical staff."

**Count XI** – Defendant Warden Copes is responsible for all operations, practice, policy and procedures at SLCC and is responsible for overseeing the staff at SLCC and Major Striedel, the Security Officer,  is responsible for the safety and security of inmates. Warden Bullard is the Alabama Warden responsible for the security and safety of Alabama inmates.

Plaintiff claims that he is locked in a 40' x 30' "Pod" for 22 hours a day with 39 other inmates. He claims that the pod's day-room or common area is only 10' x 25' and allows seating for only 10 inmates "... leaving approximately 700 square feet of area in which double bunks are

placed resulting in approximately 18.5 square feet of living space for each of the 40 inmates. Plaintiff claims that there are no working windows to allow fresh air. Plaintiff complains that the other "pods' are roomier. He complains that there is no means of communicating with the corrections officers in the "cube" other than by pounding or beating on the door or glass which separates the "cube" from the "pod." According to plaintiff these factors have led to an increase in tension and fights among inmates and it usually takes "several more minutes" before officers can enter the pod and take control of the situation.  Plaintiff complains about overcrowding and "idleness" caused by confinement in the pod for 22 hours a day.

Plaintiff further complains that the tension increases because the Alabama prisoners are unable to have regular visitation with their relatives due to the distance from home and are forced to use cell phones to make calls which are very expensive. Plaintiff also complains that the noise level in the pods makes it impossible to hear cell phone conversations.

Plaintiff further complains about overcrowding in the lock-up-cells with up to 6 inmates being placed in cells designed for 2 inmates.  Plaintiff also complains that Alabama inmates are locked-up with Louisiana inmates thus increasing the potential for violence.

Plaintiff also complains that canteen items, specifically tobacco, are more expensive than similar items in Alabama.

Finally, plaintiff complains that the American Public Health Association requires a minimum of 75 square feet per person in a dormitory and "*Chapman v. Rhodes*, 434 F.Supp. 1007 [r]equires no more inmates than can be effectively supervised in a setting which provides at least 60 square feet per inmate." Plaintiff claims that he is living in less than 20 square feet of living area.

7

Plaintiff prays for an injunction prohibiting the defendants from retaliation. [doc. 20]

### 3. The Second Amended Complaint [doc. 25]

On June 1, 2007, plaintiff filed a Motion for Leave to Amend [doc. 25] accompanied by exhibits but no pleadings.

### 4. Motion for Injunction [doc. 26]

On June 13, 2007, plaintiff filed a Motion for Injunction citing FRCP Rule 65 and asking for an injunction to prohibit: (1) the practice of "non-screening" of newly arrived inmates for "communicable infectious diseases;" (2) the practice of integrating Louisiana and Alabama inmates in segregation cells; (3) the practice of confining four or five inmates in cells designed for two inmates; (4) the practice of not responding to sick calls and dental emergencies; (5) the practice of charging inmates for forms required by the court; (6) the unconstitutional practice of issuing 10 sheets of typing paper per week to each inmate and 5 typewriter ribbons a month for the law library for 500 Alabama inmates; (7) the practice of holding inmate mail for up to 5 days before delivering it to the inmate; (8) kitchen services from using improper food storage and transportation carts to transport food to inmates in lock-up confinement; (9) retaliation; and, (10) any shower without a partition. [doc. 26]

### 5. Plaintiff's Second Motion for Appointment of Counsel [doc. 27]

On June 20, 2007, plaintiff filed a second motion seeking appointment of counsel.

8

*Law and Analysis*

### *1. Appointment of Counsel [doc. 27]*

Plaintiff has filed Motions seeking appointment of counsel. [docs. 3 and 27] His first

motion was denied by the United States District Court in Alabama. [doc. 7][2]

With regard to this second motion, it is noted that plaintiff is proceeding in *forma*

*pauperis.*  A review of the pleadings supports a finding that he should be considered indigent for

the purposes of this evaluation.

Congress has not specifically authorized courts to appoint counsel for plaintiffs

proceeding under 42 U.S.C. §1983.  "Generally no right to counsel exists in §1983 actions [but]

appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional

circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985).  Pursuant to 28

U.S.C. §1915(e)(1), federal courts are given the power to <u>request</u> that an attorney represent an

indigent plaintiff.  (In the case of *Mallard v. United States District Court for the Southern*

*District*,  490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) the United

States Supreme Court held that federal courts can only request that an attorney represent a person

unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1)

to make compulsory appointments.)

Although courts can request that an attorney represent an indigent plaintiff, the court is

not required to make this request in the absence of "exceptional circumstances." See *Ulmer v.*

---

[2] Citing *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999); *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th cir. 1993);
and *Dean v. Barber*, 951 F.2d 1210, 1216 (11th Cir. 1992), and noting plaintiff's failure to demonstrate exceptional
circumstances justifying the appointment of counsel, Magistrate Judge Coody denied plaintiff's first  motion to
appoint counsel on March 6, 2007.

9

*Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982) and *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th Cir. 1989). No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in determining whether the plaintiff is entitled to have the court request that counsel assist him in his suit. It is proper for the court to consider the following factors: (1) the type and complexity of the case; (2) the plaintiff's ability to adequately present and investigate his case; (3) the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and (4) the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." See *Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. KellarF*, 950 F.2d. at 293, n.14; see *also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242. Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure private counsel on his own behalf. See *Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213. Plaintiff is not excused from trying to procure counsel for himself.

Plaintiff has managed to file an original complaint setting forth various causes of action against various named defendants; he has also filed various motions in Alabama and Louisiana including amended complaints and a motion for injunction. His original and amended complaints set forth individually numbered paragraphs detailing his claims against each defendant; he has provided various exhibits and documents in support his claims.

His claims for relief are not necessarily atypical of those often asserted by prisoners in civil rights litigation and are not complex. Plaintiff has first hand knowledge of the facts which form the basis of this action and needs no assistance in recounting those facts to the court. Based

on the quality of the pleadings and supporting documentation submitted thus far, the undersigned is convinced that petitioner is capable of adequately presenting his case. Further, as is noted hereinafter, plaintiff's claims are frivolous and should not survive initial review.  Thus, appointment of counsel would not benefit the plaintiff or the court.

Accordingly, plaintiff's request for appointment of counsel should be denied as the circumstances presented herein are not "exceptional" so as to  warrant the appointment of counsel.

### 2. Frivolity Review

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983,  the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if  it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991).  A district court may dismiss a prisoner's civil rights complaint

11

as frivolous based upon the complaint and exhibits  alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous.  *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint, amended complaint, and the supporting memorandum and exhibits have been reviewed. Accepting all of plaintiff's allegations as true, the undersigned concludes, for the reasons stated hereinafter, that his complaints must be dismissed as frivolous or, for failing to state a claim for which relief may be granted.

### 3. Plaintiff's Claims for Relief

Plaintiff presents various claims.  He alleges a violation of Louisiana law, and generally alleges that he has been denied access to the courts, received inadequate medical treatment, subjected to unwholesome conditions of confinement, and that his equal protection rights have been violated.  Plaintiff has also submitted exhibits in support of his claims, and exhibits which complain of circumstances and conditions not raised in the formal counts.

12

***Count VI – Violation of La. R.S. 15:709(C)***

Plaintiff claims that the defendants are in violation of La. R.S.15:709(C)'s prohibition against housing out-of-state inmates in private facilities.  However, in order to state a claim under §1983, a plaintiff must allege the violation *of a right secured by the Constitution and laws of the United States*, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (emphasis supplied).

It is well settled that a "violation of state law alone does not give rise to a cause of action under § 1983 ." *Williams v. Treen*, 671 F.2d 892, 900 (5th Cir.1982); see *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir.2000).

Plaintiff's claim that the defendants are in violation of Louisiana law is frivolous and should be dismissed.

***Counts VII and VIII and Counts 5, 6, and 7 of the Motion for Injunction – Access to Court***

In this series of related claims, plaintiff complains that various defendants deprived him of his First Amendment Right to communicate by mail and otherwise deprived him of his constitutionally protected right to access the courts.  Plaintiff claims as follows:

1.   he has been deprived of adequate access to legal materials and afforded inadequate time in the law prison law library. [Claim VII];

2.   "legal mail" is distributed only every other week, defendants open it outside the presence of its inmate-recipient, and inmate mail is often held more than 24 hours for no legitimate purpose. [Count VIII, Injunction, doc. 26, paragraph 7]

3.   notary public services are provided only one day per week;

4.   certified mail charges must be paid by all inmates, even those who are indigent;

13

5.      all out-going mail is censored and one of his fellow inmates had a letter of complaint seized by prison officials. [Count VIII]

6.      inmates are charged for forms required by the court;

7.      each inmate is allowed only 10 sheets of typing paper per week and only 5 typewriter ribbons are allotted each month for typewriters made available to over 500 inmates. [doc. 26, paragraph 5, 6, 7]

In order to prevail on a denial of access to court claim, a civil rights plaintiff must show that he suffered some prejudice as a result of the deprivation.  See *Lewis v. Casey*, 518 U.S. at 350-355, 116 S.Ct. at 2179- 81; *Eason v. Thaler*, 73 F.3d at 1328; *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.1992), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992); and *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir.1988).

With respect to the mail tampering claim, plaintiff must allege that his position as a litigant was prejudiced in order to state a constitutional violation of an inmate's right of access to the courts.  See *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992).

Here, plaintiff has failed to demonstrate that he was deprived of the opportunity to litigate some non-frivolous civil rights or habeas corpus claim. Since plaintiff cannot demonstrate prejudice, his first claim against Sgt. Darby lacks an arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff also claims that the defendants interfered with his mail and withheld "legal mail" for days at a time. As with the first claim, in order to rise to the level of a constitutional violation plaintiff must allege that his position as a litigant was prejudiced by the defendants' actions.  See

14

*Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992). Here, plaintiff has only asserted that the defendants deprived him of his mail for a period of days. He did not claim that his position as a litigant was in any way prejudiced by this act and therefore he has failed to state a cognizable constitutional claim. See *Brewer v. Wilkinson*, 3 F.3d 816 (5th Cir.1993), *Walker v. Navarro County Jail*, 4 F.3d 410 (5th Cir.1993).

Next, plaintiff complains that he is not allowed adequate access to an adequate law library. Plaintiff has misconstrued and exaggerated the constitutional parameters of the right of access to the courts. This right merely assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights. *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996); *Norton v. Dimazana*, 122 F.3d 286, 289 (5th Cir.1997).

Prison officials  have considerable discretion in choosing the mechanism and forms of assistance they will furnish to prisoners for the purpose of allowing prisoners to file non-frivolous legal claims.  See *Lewis v. Casey*, 518 U.S. at 356, 116 S.Ct. at 2182, ("Of course, we leave it to prison officials to determine how best to ensure that inmates... have a reasonably adequate opportunity to file non-frivolous legal claims challenging their convictions or conditions of confinement.")

Plaintiff's allegations, construed liberally and taken as true for the purposes of this review, fail to demonstrate that the defendants denied  him access to the courts as that term is defined in the foregoing jurisprudence.  The Supreme Court has not extended the right to access the courts to encompass any more than the ability of an inmate to prepare and transmit a

15

necessary legal document to a court. *Brewer v. Wilkinson*, 3 F.3d at 821. See also *Lewis v. Casey*, 518 U.S. at 349-355, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996).  Clearly, plaintiff has not been denied that right.

In fact, plaintiff has not demonstrated any negative impact as the result of  the alleged limitations on paper, notarial services, postage, or law library access.  The record shows that while incarcerated at SLCC, plaintiff was able to file and litigate the present civil rights claims. In conjunction with these claims, he filed a fourteen-page typewritten complaint [doc. 1-1], accompanied by 37 pages of exhibits [docs. 1-3 and 1-4], and eleven pages of "declarations." [doc. 1-5]; a completed application to proceed *in forma pauperis* [doc. 2]; a two page typewritten Motion to Appoint Counsel [doc. 3]; a three page typewritten Motion to Certify Class Action [doc. 4]; a three page typewritten Motion to File an Amended Complaint [doc. 10]; a six page typewritten Objection to the Alabama Magistrate Judge's Report and Recommendation [doc. 12]; a typewritten letter to the Clerk of Court requesting an *in forma pauperis* application [doc. 16]; a second complete *in forma pauperis* application filed in this court [doc. 17]; a nine page typewritten amended complaint [doc. 20]; a copy of his amended complaint [doc. 22]; a hand-written letter to the Clerk of Cuort [doc. 24]; a sixteen page Motion to Amend accompanied by exhibits [doc. 25]; a two page typewritten Motion for Injunction [doc. 26]; and, a second two page typewritten motion to appoint counsel. [doc. 27]

Further, even if plaintiff could demonstrate that the defendants somehow deprived him of his constitutional right to access the courts,  he must still allege facts to establish that he suffered some prejudice as a result of the deprivation.  See *Lewis v. Casey*, 518 U.S. at 350-355, 116 S.Ct. at 2179- 81; *Eason v. Thaler*, 73 F.3d at 1328; *Walker v. Navarro County Jail*, 4 F.3d 410, 413

16

(5th Cir.1993); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.1992), *cert. denied*, 504 U.S. 988, 112 S.Ct. 2974, 119 L.Ed.2d 593 (1992); and *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir.1988).  In *Lewis v. Casey*, the Court noted that its prior access to courts jurisprudence "...did not create an abstract, freestanding right to a law library or legal assistance...", and that "...an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense...". Thus, according to the Court, an inmate alleging the denial of access to the courts based upon the inadequacies of the institution's law library  "... must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* at 351.

Plaintiff has wholly failed to allege any <u>specific</u> facts establishing that he was <u>actually prejudiced</u> in connection with any pending or contemplated legal proceeding by any alleged act or omission by any of the named defendants herein. Because plaintiff has presented no fact-specific allegations establishing that he was ever actually prejudiced in connection with any actual or proposed legal proceeding, his claims do not provide a basis for recovery under § 1983. Plaintiff has not shown that the actions of the defendants inhibited him from filing or litigating a non-frivolous complaint.  His access to court claims are also frivolous, and dismissal on that basis is appropriate.

***Counts VII, IX,  and, XI and Counts 2, 3, 8, and 10 of the Motion for Injunction – Conditions of Confinement***

Plaintiff also complains of various conditions of confinement at SLCC, as follows:

1.      he is denied adequate opportunity for exercise and exposure to "fresh air;"

2.     he has been exposed to a "hostile environment" caused by an improperly trained staff which does not properly supervise the prison dorms;

3.     there are no windows in the dorm and he is forced to spend up to 23 hours a day in the poorly ventilated quarters which fail to meet A.D.A. standards. [Claim VII]

4.     Alabama and Louisiana inmates are housed together, exercise together, and are often confined together in the lock-up cells.

5.     infected Louisiana inmates are housed with Alabama inmates, prepare food, and work in the facility's kitchen. [Count IX];

6.     he is confined to a 40' x 30' pod for 22 hours a day with 39 other inmates which provides insufficient room for that number of inmates;

7.     there is no means of communicating with the corrections officers other than by pounding or beating on the door or glass

8.     the prison in general, and lock-up cells in particular, are overcrowded with idle inmates, causing an increase in tension and fights;

9.     the living space allotted to each individual inmate violates the recommendations of the American Public Health Association. [Count XI][3]

The standard applicable to conditions of confinement cases is well settled.  "The Constitution does not mandate comfortable prisons ... but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995).

In order to prevail on a conditions of confinement claim, a prisoner must allege facts which suggest that the prison officials' conduct resulted in the plaintiff being incarcerated under "conditions which [posed] an unreasonable risk of damage to [the prisoner's] future health."

---

[3] In his claim for injunctive relief he complains about the integration of Alabama and Louisiana inmates, overcrowding in lock-up, the fact that food is cold when served to the inmates in lock-up, and that the showers lack partitions. [Motion for Injunction, Counts 2, 3, 8, and 10]

18

*Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir.2001). This "risk must be of such a level that today's society would not tolerate it." *id.*  In order to prevail on such a conditions of confinement claim, a plaintiff must plead facts which establish: (1) objectively, that the deprivations are sufficiently serious; and (2) subjectively, that the defendant prison officials knew of the deprivations but nevertheless showed"deliberate indifference" to the plaintiff's "health or safety." *id.*; see also *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir.1998).

In order to successfully plead "deliberate indifference," the plaintiff may not rely upon conclusory allegations, but must allege facts which demonstrate that the defendants knew of, but disregarded, a substantial risk of serious harm to his health. *Farmer v. Brennan*, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  Further, he must plead facts which establish that the defendants: (1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed. *id.*  The conditions complained of must be "so serious as to deprive [him] of the minimal measure of life's necessities..." see *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995) (quotation marks omitted).  This he has not been done.[4]

While the conditions complained of may be uncomfortable, they are not inhumane. Consequently, plaintiff's conditions of confinement claim against the defendants lacks an

---

[4] In support of this claim plaintiff submitted a grievance dated November 15, 2006. In that grievance plaintiff complained only that the air conditioning was making the dormitory too cold. He voiced no other complaints concerning the conditions of his confinement. [doc. 1-4, Exhibit F-3] On October 26, 2006 he complained that rain water leaked into the dormitory causing a puddle. [*id.*, Exhibit F-2] In the declarations filed in conjunction with the original complaint, various inmates complained of various conditions of confinement, however, plaintiff himself did not author a declaration or complaint concerning unwholesome conditions of confinement other than his complaint about the integration of Alabama and Louisiana inmates. [doc. 1-5, see, pp. 5-6]

19

arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

### Count X, and Counts 1 and 4 of the Motion for Injunction – Inadequate Medical Care

Plaintiff complains that the SLCC medical staff does not screen newly-arriving inmates for communicable diseases and that this poses a threat to the health and safety of plaintiff and other inmates. He also complains that often, at night, the SLCC medical staff is absent from the facility. Plaintiff complains that he has not received adequate treatment for dental problems and that he has been in pain for a period of three months.

Plaintiff is a convicted inmate in the custody of ADOC.  A convicted inmate's right to receive adequate and timely medical care is based upon the Eighth Amendment's prohibition against cruel and unusual punishment. That constitutional right is violated only if the defendants act with deliberate indifference to a substantial risk of serious medical harm which results in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The defendants  must have the subjective intent to cause harm. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

To establish a claim, plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001).  Again, deliberate indifference in this context  means that: (1) the defendants  were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) they actually drew that inference; and (3) their response indicated that they subjectively intended that harm occur. *id.* at 458-59.  Thus, the defendants' "...  failure to

20

alleviate a significant risk that [they] <u>should have perceived</u>, but did not is insufficient to show

deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756

(5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely

from a negligent or even a grossly negligent response to a substantial risk of serious harm."

*Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only <u>unnecessary and wanton</u>

<u>infliction of pain</u> repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d

1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th

Cir.1999)(emphasis supplied). The fact that a plaintiff disagrees with what medical care is

appropriate does not state a claim of deliberate indifference. See *Norton v. Dimazana*, 122 F.3d

286, 292 (5th Cir.1997).

Plaintiff has provided only conclusory allegations in support of his claim of inadequate

medical care.  His factual allegations fail to establish that the defendants were aware of facts

from which an inference of substantial risk of serious harm could be drawn; that they actually

drew that inference; and that their response indicated that they subjectively intended that harm

occur to the plaintiff. See *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-459 (5th

Cir.2001)

To the extent that plaintiff claims that the defendants "should have perceived" a risk of

harm to plaintiff, but did not, such claim is of no moment since  "...the failure to alleviate a

significant risk that [the official] should have perceived, but did not, is insufficient to show

deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756

(5th Cir.2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of

21

pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th

Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

At worst, plaintiff makes a case for negligence or malpractice. His failure to allege facts[5]

sufficient to establish deliberate indifference is thus fatal to his medical care claims.  In short,

plaintiff's medical care claims lack an arguable basis in law and in fact and should be dismissed

as frivolous.

***Counts VII, VIII, XI – Equal Protection Claims***

Plaintiff's complaint, construed liberally, alleges a denial of equal protection based upon

the claim that plaintiff is treated differently than other ADOC inmates who remain incarcerated

in Alabama.  Plaintiff alleges as follows:

1.  he has been deprived of rights, benefits, privileges, and programs that are
    available to ADOC inmates housed in Alabama prisons [Count VII];

2.   "incentive packages" permitted by ADOC are not permitted by SLCC and
    therefore the ADOC inmates at SLCC are not allowed to receive the packages
    [Count VIII];

3.   ADOC prisoners housed at SLCC are unable to have regular visitation from
    family and are forced to use cell phones to communicate with their loved ones,

---

[5] In support of his medical care claims plaintiff has provided a copy of an Administrative Grievance dated
November 30, 2006 in which he complains, "An astronomical amount of sick call slips are being deliberately
ignored. Myself and several inmates have requested medical screening, never being evaluated by anyone or receiving
a reply."  Plaintiff requested only the following relief, "A daily log needs to be kept on all sick call requests and
inmates should be seen if not that day the following. As Ala. inmates are accustomed to." [Exhibit E-1, doc. 1-4]
Plaintiff did not claim any specific illness; nor did he request treatment.  He also submitted an Offender Request on
November 30, 2006 to Captain Jones. In this request he stated, "I've placed two medical sick call requests in to be
screened for a Doctor's appointment. I have not been seen for sick call yet. Alabama does not ignore inmate medical
request. The following day after we put the sick call slip in, we see a nurse and this neglect has been going on since
our arrival here." As a result of this request, plaintiff was given an appointment to see Dr. Tassin on December 5,
2006. [id.] Again, plaintiff did not complain of a specific medical problem; nor did he request specific treatment.
Plaintiff submitted a third request on January 26, 2007.  In that request he asked that allergy medications be "re-
prescribed." That request was apparently forwarded to the medical staff. [id., Exhibit E-3] On March 16, 2007,
plaintiff submitted a request for dental care to Warden Jacks. However, other than a general claim of "pain and
discomfort" plaintiff made no specific claim of injury or illness. [doc. 22, p. 9]

22

and the noise levels at SLCC are such that it is impossible to communicate via cell phone; and

4.    the canteen prices at SLCC are more expensive than similar products in Alabama. [Count XI.]

In order for plaintiff to succeed on this equal protection claim, he must prove that the defendants  "created two or more classifications of similarly situated prisoners that were treated differently, ... and (2) that the classification had no rational relation to any legitimate governmental objective." *Stefanoff v. Hays County, Tex.*, 154 F .3d 523, 527 (5th Cir.1998) (citations omitted). He must demonstrate that the defendant acted with a "discriminatory purpose."  *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir.1995). "Discriminatory purpose ... implies that the decision-maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *Id.* (quoting *United States v. Galloway*, 951 F.2d 64, 65 (5th Cir.1992)). "The existence of a discoverable group or classification antedating the challenged state action is a *sine qua non* for proving purposeful discrimination; it cannot tenably be maintained that the state selected a particular course of action to harm an 'identifiable group' when that body did not exist until after the state acted." *Id.* at 307. While prisoners are a class within the general population, "prisoners *qua* prisoners" are not a "discoverable group or class." *Id.* at 307 n. 10. See *Carson v. Johnson*, 112 F.3d 818, 821-22 (5th Cir.1997) ("Neither prisoners nor indigents constitute a suspect class.") See also,  *Harris v. McRae*, 448 U.S. 297, 323, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980) (Indigents are not a suspect class.); *United States v. King*, 62 F.3d 891, 895 (7th Cir.1995) (Prisoners are not a suspect class.); see also *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S.

23

432, 440-41, 105 S.Ct. 3249, 3254-55, 87 L.Ed.2d 313 (1985) (Providing a listing suspect classes).

"Disparate impact alone cannot suffice to state an Equal Protection violation; otherwise, any law could be challenged on Equal Protection grounds by whomever it has negatively impacted." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir.1997).

With these principals in mind, and construing the complaint liberally, plaintiff simply has not demonstrated a "disparate impact;" nor has he demonstrated the existence of a "discoverable group or classification antedating the challenged actions" of the defendant.

Finally, it must be observed that plaintiff's current "classification" is not the result of any act or omission by the remaining Louisiana defendants. The fact that plaintiff is an Alabama inmate who is serving his sentence in a Louisiana prison cannot be attributable to the Louisiana defendants. The decision to send plaintiff to Louisiana was made by ADOC authorities.  Plaintiff has failed to state a claim for violation of his constitutional rights to equal protection and therefore, this claim must also be dismissed as frivolous.

With respect to his specific claim concerning commissary purchases, the law is clear: inmates have no constitutionally protected interest in purchasing stamps, food substances, or any other goods through the prison commissary at the cheapest price possible. Cf.  *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed."); *French v. Butterworth*, 614 F.2d 23, 25 (1st Cir.1980)(holding "there is simply no legal basis for a demand that inmates be offered items for purchase at or near cost"); *McCall v. Keefe Supply*

*Co.*, 71 Fed.Appx. 779, 780 (10th Cir.2003) (stating that an inmate's claim that prison commissary charged "outrageous" prices for goods purchased through the prison commissary failed to state a constitutional claim). Thus, to the extent that plaintiff asserts a claim with respect to the prices charged at the SLCC commissary, his claim is also frivolous.

### Miscellaneous Claims for Relief Not Specifically Alleged

Plaintiff has submitted exhibits which allege additional violations not specified in the formal Counts of plaintiff's complaint.

Plaintiff implies that corrections officers at SLCC made inappropriate racial comments and threats toward the inmates in their charge. Such activity, while deplorable, does not state a cause of action since allegations of verbal abuse do not present an actionable §1983 claim. *Bender v. Brumley*, 1 F.3d 271, 274 (5th Cir.1993). The threatening language and gestures of a custodial officer do not amount to a constitutional violation. *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.); *cert. denied*, 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983)(quoting *Coyle v. Hughs*, 436 F.Supp. 591, 593 (W.D.Okla.1977)). Consequently, these allegations lack an arguable basis in law and are frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff implies that the defendants failed to train security personnel at SLCC. When a plaintiff alleges failure to train, he must show: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and (3) the failure to train or supervise amounts to deliberate indifference to plaintiff's constitutional rights. *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir.), *cert. denied*, 540 U .S. 826, 124 S.Ct. 181 (2003); *Thompson v. Upshur County*, 245

25

F.3d 447, 459 (5th Cir.2001). To satisfy the deliberate indifference prong, a plaintiff must demonstrate a pattern of violations and that the inadequacy of the training is "obvious and obviously likely to result in a constitutional violation." *id.*  Plaintiff has made no such allegation. He has neither alleged nor shown a pattern of violations involving the SLCC staff.

Plaintiff has not raised a specific claim of retaliation, but he asks for injunctive relief prohibiting retaliation. It is well established that prison officials may not retaliate against an inmate because that inmate exercised a right guaranteed to him under the constitution. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir.1995), *cert. denied*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996).  However, the Fifth Circuit instructs that claims of retaliation from prison inmates must be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in penal institutions. *Woods v. Smith*, 60 F.3d at 1166. To state a claim of retaliation, a prisoner must allege facts which establish that (1) he exercised  a specific constitutional right, (2) the defendant had the intent to retaliate against him for his exercise of that right, (3) a retaliatory adverse act occurred, and (4) causation.  Causation requires a showing that "but for the retaliatory motive the complained of incident ... would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1997) (quoting *Woods*, 60 F.3d at 1166), *cert. denied*, 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997); *McDonald v. Steward*, 132 F.3d 225 (5th Cir. 1998).  "The inmate must allege more than his personal belief that he is the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir.1999).  "The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Id.* (quoting *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir.1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084(1996)).

26

Plaintiff has not alleged facts to suggest that he has been or will foreseeably be a victim of retaliation.

Finally, plaintiff has apparently moved for a preliminary injunction. [doc. 26] A movant for a preliminary injunction must demonstrate each of the following: 1) a substantial likelihood of success on the merits; 2) a substantial threat that failure to grant the injunction will result in irreparable injury; 3) the threatened injury outweighs any damage that the injunction will cause to the adverse party; and 4) the injunction will not have an adverse effect on the public interest. *Women's Med. Ctr. of Northwest Houston v. Bell*, 248 F.3d 411, 418-20 (5th Cir.2001). "An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable harm." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir.1976).

Plaintiff simply cannot prevail because, as has been shown above,  he cannot demonstrate a substantial likelihood of success on the merits of his claims.

***Conclusion***

For the foregoing reasons,

Plaintiff's Motion to Appoint Counsel [doc. 27] is **DENIED;** and,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DENIED** and **DISMISSED  WITH PREJUDICE** as frivolous or for failing to state claims for which relief may be granted pursuant to the provisions of  28 U.S.C. §§1915(e)(2)(B)(i) and (ii)  and 1915A(b)(1); and,

**IT IS FURTHER RECOMMENDED THAT** plaintiff's Motion for Injunction [doc. 26] be **DENIED** and **DISMISSED WITH PREJUDICE.**

27

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglas v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on July 18, 2007.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)